UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACOB CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Cause No. 1:14-cv-1274-WTL-DKL |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Jacob Curry requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, rules as follows.

I.      APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II.     PROCEDURAL HISTORY

Jacob Curry filed for DIB and SSI on December 15, 2011, alleging he became disabled on February 15, 2010. His application was denied initially on February 8, 2012, and again upon reconsideration on April 2, 2012. Following the denial upon reconsideration, Curry requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, during which Curry was represented by counsel, was held on April 4, 2013. Also present at the hearing were Dr. Don A. Olive, a medical expert, and Gail K. Corn, a vocational expert. ALJ Belinda Brown issued her decision denying Curry's application on April 25, 2013, and the Appeals Council denied Curry's request for review on June 10, 2014. After the Appeals Council denied review of the ALJ's decision, Curry filed this timely appeal.

## III.     THE ALJ'S DECISION

The ALJ determined at step one that Curry had not engaged in substantial gainful activity since February 15, 2010, the alleged onset date. At steps two and three, the ALJ concluded that Curry had the severe impairments of "post-traumatic stress disorder 'PTSD,' personality disorder, and depression," R. at 14, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Curry had the residual functional capacity ("RFC")

> To perform a full range of work at all exertional levels with the following nonexertional limitations: the claimant is limited to performing simple, routine, and repetitive tasks that require no production rate. He is able to make simple work-

      related decisions.  The claimant must have only occasional contact with supervisors
      and co-workers and no contact with the general public.

*Id*. at 17.  Given that RFC, the ALJ determined that Curry could not perform any of his past relevant work.  Finally, at step five, considering Curry's age, education, work experience, and RFC, the ALJ determined that Curry could perform a range of work that exists in the national economy.  Accordingly, the ALJ concluded that Curry was not disabled as defined by the Act.

### IV.    EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Curry's brief (Dkt. No. 14) and need not be recited here.  Specific facts are set forth in the discussion section below where relevant.  His arguments are addressed below.

### V.    DISCUSSION

Curry argues that the ALJ erred in failing to consider his gender identity disorder and in rejecting the opinions of his treating physician.  He also argues that he is entitled to remand for consideration of new and material evidence.

#### A.  Gender Identity Disorder

Curry first argues that the ALJ erred in failing to identify his "gender identity disorder as a severe impairment in Step two of her analysis." Pl.'s Br. at 6.  While the ALJ did not find Curry's gender identity disorder to be a severe impairment, the Court disagrees with Curry that this is reversible error.

At the hearing, Curry testified that he attended group therapy for his gender identity disorder.  He noted that he had always felt different, but when he was twelve or thirteen, he tried on his stepmother's clothing and "the world finally made sense." R. at 73.  He testified that when he was in women's clothing, he "felt whole, like there wasn't anything missing, that this was okay and that—that's the way it was supposed to be." *Id*.  His attorney clarified, therefore, that

4

while Curry was a twenty-eight-year-old male, on the inside he felt like a woman. *Id*. at 74.  His attorney noted that his gender identity disorder was "just one of the issues that [Curry was] dealing with in all of this." *Id*.

Curry has identified no additional functional limitations caused by his gender identity disorder.  He did not do so at the hearing, nor does he do so in his brief.  Without evidence of how his gender identity disorder causes additional and/or more severe limitations than that which the ALJ found, the Court cannot say that the ALJ's failure to consider his gender identity disorder as a severe impairment requires reversal or remand.

### B.  Treating Physicians

Next, Curry argues that the ALJ erred in rejecting the opinions of his treating physicians.  A recent Seventh Circuit opinion described what is commonly referred to as "the treating physician rule":

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record.  If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it.  But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-100 (7th Cir. 2013) (internal quotation marks and citations omitted).  The Seventh Circuit has further noted that, "'[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.'" *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2))).

Kay Upsal, Curry's counselor, completed a Mental Impairment Questionnaire ("the Questionnaire") on March 25, 2013; Dr. Judi Knowles-Duncan, Curry's psychiatrist, countersigned the Questionnaire on that same date.[1]  Upsal noted that Curry was diagnosed with PTSD, gender identity disorder, and borderline personality disorder.  She noted that Curry's symptoms included impairment in impulse control, difficulty thinking or concentrating, paranoid thinking, memory impairment, and emotional withdrawal or isolation, among others. *See* R. at 853-54 (noting Curry exhibited over thirty different symptoms).  Upsal noted that Curry had experienced three episodes of decompensation, defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning," *id*. at 855, noted that Curry was "marked" in his difficulties in maintaining social functioning, and opined that Curry was "[i]ncapable of even 'low stress' jobs" due to his mood swings, paranoia, and insomnia. *Id*. at 856.  The ALJ gave no weight to this opinion:

> I have reviewed the medical source statement completed by Kay Upsal, MA, LMHC, the claimant's treating therapist and countersigned by Judi Knowles Duncan, M.D., the claimant's treating psychiatrist (Exhibit 20F).  I find that the alleged symptoms and proposed restrictions are inconsistent with objective evidence of record.  For example, there is no objective evidence of the claimant's history of three episodes of mental decompensation lasting two weeks, multiple physical symptoms (exacerbated by psychiatric factors), memory impairment, or isolation.  His daily activities further contradict the medical source statement.  Because the medical source statement is inconsistent with substantial evidence of record, I find that it is not entitled to any weight[.]

---

[1] It is not entirely clear to the Court if the ALJ, the Commissioner, or Curry identify the Questionnaire as being completed by an "acceptable medical source" or an "other source." *See* SSR 06-03p (noting that the distinction between "acceptable medical sources" and "other sources" is important because "only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.").  Upsal, a licensed mental health counselor, is clearly an "other source"; however, the Questionnaire is countersigned by Dr. Knowles-Duncan, a psychiatrist, who personally treated Curry on a monthly basis for a year and a half.  Regardless, even information from "other sources" must be considered by an ALJ as they "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[.]" SSR 06-03p.

*Id*. at 20. The Court agrees that the ALJ's cursory consideration of this opinion requires remand.

To begin, the ALJ completely failed to consider any of the above-listed factors. Upsal, a licensed mental health counselor, began treating Curry in April 2011; she had been treating him for almost two years by the time she completed the Questionnaire. *Id*. at 496. Dr. Knowles-Duncan, a psychiatrist, began treating Curry in October 2011; she had been treating him for almost a year and a half by the time she completed the Questionnaire. *Id*. at 440-41. Upsal saw Curry on a weekly basis for individual counseling and group therapy; Dr. Knowles-Duncan saw Curry monthly for medication review. Both had a long-standing, continuous relationship with Curry, offering numerous comments on his impairments and his functional limitations. This is in contrast to the State agency medical consultants and medical expert to whom the ALJ gave "considerable" and "great" weight to. *See id*. at 19-20.

Moreover, in assigning no weight to this opinion, the ALJ "cherry-picked" certain comments in the Questionnaire, finding them to be inconsistent with the record, rather than consider the opinion as a whole. Indeed, Upsal and Dr. Knowles-Duncan opined that Curry exhibited over thirty separate symptoms listed in the Questionnaire; the ALJ, however, discussed less than five. Further, many of the symptoms listed in the Questionnaire are consistent with Curry's own testimony and the findings of the State agency doctors. On remand, the ALJ shall consider the *entirety* of the opinion, taking into consideration the fact that both Upsal and Dr. Knowles-Duncan are uniquely qualified to opine on Curry's mental impairments, given their long-standing and relationship with him.[2]

---

[2] On remand, the ALJ shall also consider the additional evidence considered by the Appeals Council, Exhibit 21F. *See* R. at 5 ("The Appeals Council has received additional evidence which it is making part of the record. That evidence consists of the following exhibits . . . Exhibit 21F.").

## VI. CONCLUSION

As set forth above, the ALJ in this case erred in her treatment of Upsal's and Dr. Knowles-Duncan's opinion. The decision of the Commissioner is therefore **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 8/3/15

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication